1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  SAN DIEGO COASTKEEPER, a non-          Case No.:  24-CV-1477 JLS (DEB)
    profit corporation; COASTAL
12  ENVIRONMENTAL RIGHTS                   **ORDER GRANTING JOINT**
13  FOUNDATION, a non-profit corporation,  **MOTION TO ENTER CONSENT**
                                           **DECREE**
14                            Plaintiffs,

15  v.

16  BAKER IRON WORKS, INC., a              (ECF No. 16)
    California corporation,
17
                              Defendant.
18

19          Presently before the Court is the Parties' Joint Motion to Enter Consent Decree

20  ("Joint Mot.," ECF No. 16).  Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the

21  Motion presented appropriate for resolution without oral argument.  For the reasons below,

22  the Court **GRANTS** the Motion.

23                              **BACKGROUND**

24  **I.    Factual Background**

25          The instant case was brought under the citizen suit enforcement provision of the

26  Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or

27  "CWA").  Plaintiffs San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental

28  Rights Foundation ("CERF") alleged Defendant Baker Iron Works, Inc.'s facility

                                      1

1  discharged "polluted storm water" to downstream waters and groundwater, and also

2  violated "filing, monitoring, reporting, discharge, and management practice requirements,

3  and other procedural and substantive requirements" of California's National Pollution

4  Discharge Elimination System ("NPDES") General Permit for Discharges of Storm Water

5  Associated with Industrial Activities ("Permit").  ECF No. 1 ("Compl.") ¶¶ 1, 2, 8, 9.

6          Plaintiff Coastkeeper is a non-profit public benefit corporation committed to

7  "protecting and restoring the San Diego region's water quality and supply," with a main

8  purpose to "preserve, enhance, and protect San Diego's marine sanctuaries, coastal

9  estuaries, wetlands, and bays from illegal dumping, hazardous spills, toxic discharges, and

10  habitat degradation."  *Id.* ¶ 16.  Plaintiff CERF is a non-profit public benefit corporation

11  that was established "to advocate for the protection and enhancement of coastal natural

12  resources and the quality of life for coastal residents," with a focus on "water quality

13  protection and enhancement."  *Id.* ¶ 17.  Plaintiffs allege many of their members live and/or

14  recreate in and around the San Dieguito River, San Dieguito Lagoon, and Pacific Ocean,

15  which are receiving the discharged polluted storm water and are negatively impacted by

16  these discharges.  *Id.* ¶¶ 8, 18–20.

17  **II.     Procedural Background**

18          On August 20, 2024, Plaintiffs initiated the instant action against Defendant.  *See*

19  Compl.  Subsequently, on February 19, 2025, Plaintiffs filed a Notice of Settlement and

20  Commencement of 45-Day Review, pursuant to 40 C.F.R. § 135.5.  ECF No. 12.  Plaintiffs

21  also provided the proposed Consent Decree for the Court's consideration upon the

22  expiration of the 45-day review period.  ECF No. 12-1 ("Consent Decree").  On April 8,

23  2025, Plaintiffs filed a Notice of Completion of 45-Day Review Period, *see* ECF No. 14,

24  and submitted a letter from the U.S. Department of Justice, indicating that the United States

25  had reviewed the proposed consent judgment and does not object to its entry by this Court,

26  *see* ECF No. 14-1.  Thereafter, the Court issued an Order directing the Parties to file a joint

27  motion to enter the proposed Consent Decree, as required by Civil Local Rule 7.2(b).  *See*

28  ECF No. 15 ("Order").  The Court further directed the Parties to address, in such motion,

24-CV-1477 JLS (DEB)

1  how the proposed consent decree is procedurally and substantively "fair, adequate and

2  reasonable" and "conform[s] to applicable laws[,]" and how the proposed decree furthers

3  the objectives of the "law upon which the complaint was based."  Order at 2 (citations

4  omitted).

5       On April 29, 2025, the Parties filed the instant Joint Motion.

6                              **LEGAL STANDARD**

7       "A consent decree is 'essentially a settlement agreement subject to continued judicial

8  policing.'"  *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams*

9  *v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)); *see Lares v. Reliable Wholesale Lumber,*

10  *Inc.*, No. 8:18-CV-0157-JLS-AGR, 2018 WL 6219936, at *2 (C.D. Cal. Oct. 18, 2018)

11  ("Consent decrees are hybrids of private settlement agreements and public judgements.").

12  "It is not a decision on the merits or the achievement of the optimal outcome for all parties,

13  but is the product of negotiation and compromise."  *Oregon*, 913 F.2d at 580.  "Before

14  approving a consent decree, a district court must be satisfied that it is at least fundamentally

15  fair, adequate and reasonable."  *Id.*  "In applying the 'fair, adequate and reasonable'

16  standard, courts examine both procedural and substantive fairness."  *United States v. Pac.*

17  *Gas & Elec.*, 776 F. Supp. 2d 1007, 1024–25 (N.D. Cal. 2011) (citing *United States v.*

18  *Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)); *see United States v. Coeur*

19  *D'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014) ("[W]e require a district court to review

20  a proposed consent decree for the purpose of determining whether it is fair—not only

21  procedurally, but also substantively.").  "In addition, because it is a form of judgment, a

22  consent decree must conform to applicable laws."  *Oregon*, 913 F.2d at 580.  When

23  reviewing a consent decree, a court must independently review its terms and avoid "rubber

24  stamp approval."  *See United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747

25  (9th Cir. 1995).  The approval of a proposed consent decree rests within the sound

26  discretion of the court.  *See Oregon*, 913 F.2d at 580.

27  / / /

28  / / /

24-CV-1477 JLS (DEB)

**ANALYSIS**

Under the proposed Consent Decree, Defendant is required to develop and implement mutually agreed upon Best Management Practices ("BMPs") to comply with the Permit and engage in an iterative process to determine their efficacy. *See generally* Consent Decree. Plaintiffs are also permitted to conduct one annual site inspection per year for the purposes of ensuring compliance with the Consent Decree and Permit. *Id.* ¶ 30. The Consent Decree provides that Defendant will submit a payment totaling $5,000 to I Love a Clean San Diego, a public charity, to fund environmental project activities, *id.* ¶ 33, and Defendant will pay $40,000 to Plaintiffs to "partially reimburse plaintiffs for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs associated with investigating and filing the lawsuit, and negotiating the resolution of this matter," *id.* ¶ 34. Finally, the Consent Decree requires Defendant to pay an additional $3,500 per year to Plaintiffs for the duration of the Consent Decree, to allow for Plaintiffs' ongoing monitoring. *Id.* ¶ 32.

**I.      Procedural Fairness**

The Court first considers whether the proposed Consent Decree is the "product of a procedurally fair process." *Montrose*, 50 F.3d at 746. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons*, 899 F.2d at 86; *San Diego Unified Port Dist. v. Gen. Dynamics Corp.*, No. 07-CV-01955-BAS-WVG, 2017 WL 2655285, at *7 (S.D. Cal. June 20, 2017). "The district court's role in reviewing the essentially private agreement among the parties is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Oregon*, 913 F.2d at 586 (quoting *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, according to the Parties, the proposed Consent Decree is the result of "serious, extensive negotiations in good faith for almost five months." Joint Mot. at 5. And the Parties were represented by experienced legal and technical staff, who approved the terms

of the settlement. *Id.* There is nothing in the record to suggest the consent decree resulted from anything other than "good faith, arms-length negotiations." *See Oregon*, 913 F.2d at 581; *see also Ecological Rts. Found. v. San Diego Gas & Elec. Co.*, No. 24-CV-1614-RSH-MMP, 2024 WL 4495530, at *3 (S.D. Cal. Oct. 15, 2024).

**II.     Substantive Fairness and Reasonableness**

Next, the Court considers whether the proposed Consent Decree is "substantively fair to the parties in light of a reasonable reading of the facts." *Montrose*, 50 F.3d at 746. "Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87. The relevant standard is not whether the settlement "is one which the court itself might have fashioned, or considers as ideal[.]" *Id.* at 84. "Rather, the court's approval is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice." *Oregon*, 913 F.2d at 581 (quoting *Officers for Just.*, 688 F.2d at 625)). "As long as the consent decree comes within the general scope of the case made by the pleadings, furthers the objectives upon which the law is based, and does not violate[] the statute upon which the complaint was based, the parties' agreement may be entered by the court." *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990) (internal quotation marks omitted).

Here, Plaintiff's Complaint alleges Defendant violates the CWA and the Permit, including failing to (1) implement BMPs to achieve pollutant reduction standards, (2) sample storm water discharges, and (3) prepare and implement Exceedance Response Action plans, among others. *See* Compl. The Consent Decree, in turn, requires structural and non-structural BMPs designed to reduce pollutant discharges from the facility. Consent Decree ¶ 15. Further, under the Decree, Defendant must develop a monitoring program consistent with the Permit. *Id.* ¶16. And the Consent Decree requires Defendant to prepare and submit to Plaintiffs a plan for exceedances. *Id.* ¶ 24. Thus, the Court is satisfied the Consent Decree comes within the scope of the pleadings.

The Parties also contend the proposed Consent Decree furthers the goals of the CWA

1    without protracted and expensive litigation.  The Court agrees.  The CWA strives "to

2    restore and maintain the chemical, physical, and biological integrity of the Nation's

3    waters." 33 U.S.C. § 1251(a).  To accomplish that goal, compliance with an issued Permit

4    is statutorily required and crucial.  See 33 U.S.C. §§ 1311(a), 1342.  And the Consent

5    Decree reflects negotiated terms to bring Defendant in compliance with the Permit.

6          The Consent Decree also requires Defendant to make a payment to a local nonprofit

7    working to clean the waterways into which Defendant's facility discharges.  Consent

8    Decree ¶ 33.  The Court agrees this payment furthers the goals of the CWA by funding

9    cleanup efforts in the waters receiving the discharges, thereby restoring the integrity of the

10   waters.  33 U.S.C. § 1251(a).  And this payment is reasonable, considering it is in lieu of

11   civil penalties which, according to the Parties, could be up to $66,712 per day per violation.

12   Joint Mot. at 8 (citing 33 U.S.C. § 1319(d); and then citing 40 C.F.R. § 19.4).

13         The negotiated resolution as to Plaintiffs' request for attorneys' fees is also aligned

14   with the CWA's objectives, as the statute allows for the recovery of attorneys' fees.

15   33 U.S.C. § 1365(d); *see also United States v. Electron Hydro, LLC,* No. C20-1746-JCC,

16   2022 WL 1607941, at *3 (W.D. Wash. May 20, 2022) (holding that "by awarding attorney

17   fees to Plaintiffs, the Consent Decree aligns with the CWA's fee-shifting provision, another

18   important part of its enforcement regime" (citation omitted)).

19         And Plaintiffs' request for $40,000 is not, on its face, unreasonable, in light of the

20   months of investigation, negotiation, and other efforts involved.  *See Ecological Rts.*

21   *Found.,* 2024 WL 4495530, at *4 (finding for the purposes of approving a consent decree,

22   the Court "need not enter the minefield of hours, rates, and lodestar calculations and

23   adjustments because no fee petition is at issue" (quotation omitted)).  Finally, the Consent

24   Decree is in the public interest by conserving party and judicial resources while improving

25   water quality.

26         In light of the foregoing, the Court finds that the proposed Consent Decree is fair,

27   reasonable, and equitable, and that there is no indication it violates the law or public policy.

28   *See Sierra Club*, 909 F.2d at 1355.

24-CV-1477 JLS (DEB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Accordingly, it is hereby **ORDERED**:

1.  The Joint Motion to Enter Consent Decree (ECF No. 16) is **GRANTED.**

2.  The Proposed Consent Decree (ECF No. 12-1) is **ENTERED** and attached to this Order as Attachment A.

3.  The Court will retain jurisdiction over this matter for the duration of the Consent Decree for enforcement purposes until its termination.

As this concludes the litigation in this matter, the Clerk is **DIRECTED** to **CLOSE** the case.

**IT IS SO ORDERED.**

Dated:  June 23, 2025

Hon. Janis L. Sammartino
United States District Judge

24-CV-1477 JLS (DEB)